# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN NORTHERN DIVISION

NANCI MOORE and ALEXIS MOORE;

Case No. 23-cv-11681
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

Plaintiffs,

*v.*

UNITED STATES CENTER FOR SAFESPORT; SIMONE CARDOSA, Investigator for United States Center for SafeSport, in her official capacity, and personally; Participating Entity 1; Participating Entity 2; Participating Entity 3; and Participating Entity 4,

Defendants.

## PLAINTIFF NANCI MOORE'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUNCTION

Plaintiff, Nanci Moore ("Moore"), by and through undersigned attorney moves for a Temporary Restraining Order enjoining all investigations into Moore

by the U.S. Center for SafeSport (the "Center"), file numbers 2020-01057 and 2023-03310, and all punitive or retaliatory actions including but not limited to suspensions, extra requirements, restrictions, interviews, statements, decisions, releases of reports or statements, and placing of Moore's name on any public or private disciplinary databases until such a time as this Court can evaluate the necessity of a preliminary injunction in light of the conduct of the Center.

In support of this Motion, Moore relies on the facts and law set forth in the attached Brief in Support and its exhibits, the pleadings, and other documents already on file with this Court, and all matters of which this Court may take judicial notice. Pursuant to Fed. R. Civ. P. 65(b)(1), Moore requests an expedited ruling on this Motion due to the emergency nature of the relief requested. Moore respectfully requests that the court enter a Temporary Restraining Order enjoining all investigations into Moore by the U.S. Center for SafeSport, as well as awarding any further relief that this Court deems just under the circumstances, until such time that this Court may rule on a preliminary injunction pending the outcome of the instant litigation. A proposed order granting the request for preliminary injunction will be filed in the utilities section of ECF pursuant to the local rules.

Date:  July 26, 2023

Respectfully submitted,

By:/s/ Russell S. Prince
Russell Scott Prince
**Bryan & Prince, PA.**
1600 East 8th Avenue
Centro Ybor A100
Tampa, FL 33605
(813) 491-8767
rprince@bryanprincepa.com
www.bryanprincepa.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN NORTHERN DIVISION

NANCI MOORE and ALEXIS MOORE;

Case No. 23-cv-11681
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

Plaintiffs,

*v.*

UNITED STATES CENTER FOR
SAFESPORT; SIMONE CARDOSA,
Investigator for United States Center
for SafeSport, in her official capacity,
and personally; Participating Entity 1;
Participating Entity 2; Participating
Entity 3; and Participating Entity 4,

Defendants.

## <u>BRIEF IN SUPPORT OF PLAINTIFF NANCI MOORE'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION</u>

## INTRODUCTION

Nanci Moore ("Moore") is currently a gymnastics coach and dance instructor at Bay Valley Academy. She has been instructing these disciplines for over forty-two (42) years. She coaches upper-level optional gymnastics, exhibiting expertise and knowledge beyond that required for recreational or lower-level competitive gymnastics. Despite a painful history with the sport involving the sexual abuse of her daughter by a well-known gymnastics figure and the subsequent court cases, Moore has sought to continue work in the field and with her gymnasts. Currently, Moore has been under investigation by the U.S. Center for SafeSport (the "Center") for more than three (3) years. Her daughter, the very same victim of Dr. Nassar cited above, was also investigated for the same alleged misconduct, and on March 23, 2023, both Axis and Nanci were Moore were issued a disciplinary Notice of Decision ("NOD") and the Investigative Report ("IR"). Notably, Moore's NOD included a two-year ban from all participation in the Olympic movement, among additional sanctions. Both Alexis and Nanci Moore timely moved for merits arbitrations and paid all JAMS fees associated with the arbitrations. Alexis Moore was allowed to continue to a JAMS merits arbitration where she ultimately prevailed. Moore's NOD and IR was vacated by the Center, and the Center has precluded Moore's ability to exhaust the administrative process set forth under the Code while trying to justify its own conduct throughout the investigative process.

On April 14, 2023, after vacating her NOD and IR, the Center released an

Amended Notice of Additional Allegations and Imposition of Temporary Measure,

which suspended Moore again, which stated in part:

> "Beginning on April 14, 2023, Respondent is prohibited from participating, in any capacity, in any event, program, activity, or competition authorized by, organized by, or under the auspices of the United States Olympic & Paralympic Committee (USOPC), the National Governing Bodies recognized by the USOPC, a Local Affiliated Organization as defined by the Code, or at a facility under the jurisdiction of the same."[1]

Moore paid for and attempted to schedule a JAMS Rule 40 hearing which

would allow her to challenge the suspension. However, the Center abandoned that

hearing a mere two and a half hours before it was to proceed, as evidenced by an

email from the Center's Associate Legal Counsel, dated April 27, 2023.

On May 15, 2023, the Center released a newly Amended Notice of Allegations

and Modification of Temporary Measures removing the suspension and instating

supervised coaching which stated in part:

> "Respondent is only permitted to coach and/or train athlete(s) while under the direct supervision of other, physically-present SafeSport-trained adult Participants(s), as defined by the Code. Prior to engaging in any coaching/training activities, the Respondent is required to provide the Center written notification identifying the supervisor(s) and detailing their credentials and independence from Respondent, to include a copy of the following:

---

[1] To maintain the confidential work product within the Center's April 14, 2023, Notice of Decision, plaintiffs will reference documents that will be submitted under seal. Plaintiffs have already filed a motion to file certain documents under seal pertaining to the Complaint and await the Court's orders.

> (1) proof of status as a Participant as defined by the Code;
> (2) certification of the supervisor(s) completion of SafeSport Education training;                                        and
> (3) a schedule of when the supervisor(s) will be present at any facility or event where Respondent will be coaching/training, and the supervisor(s) role at that event, program, activity, or competition.

> Direct Supervision requires the activity to be observable and interruptible by an approved SafeSport-trained adult Participant (as defined by the Code)."[2]

The Center recently released an entirely new Notice of Allegation and Imposition of Temporary Measures on July 18, 2023,[3] assigning a new case number, #2023-03310, no doubt in an attempt to separate Moore's new "allegation" from the Center's failed investigation in #2020-01057, which reinstated a suspension:

> Beginning on July 18, 2023, Respondent is prohibited from participating, in any capacity, in any event, program, activity, or competition authorized by, organized by, or under the auspices of the United States Olympic & Paralympic Committee (USOPC), the National Governing Bodies recognized by the USOPC, a Local Affiliated Organization as defined by the Code, or at a facility under the jurisdiction of the same.

---

[2] To maintain the confidential work product within the Center's May 15, 2023, Notice of Decision, plaintiffs will reference documents that will be submitted under seal.

[3] To maintain the confidential work product within the Center's July 18, 2023, Notice of Decision, plaintiffs will reference documents that will be submitted under seal.

The new Notice of Allegation, issued after the instant case was filed with this Honorable Court, centers upon Moore's naming of Participating Entities 1-4 as defendants. Despite using no identifying names or particulars and entering exhibits under seal, the Center claims without legal or factual support that the very act of attempting to hold all defendants accountable is inherently retaliatory. An Interim Measures hearing was held Friday, July 21, 2023, at considerable expense and emotional taxation to Moore. On Monday, July 24, 2023, the arbitrator removed Moore's suspension, stating that Moore had rebutted the presumption of misconduct within the new allegations of retaliation, further pointing to the excessive and purely political nature of the Center's continued conduct.

## ARGUMENT

### ABUSE OF PROCESS BY THE CENTER

The Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, through amendment to 36 U.S.C. § 2205, the Ted Stevens Olympic and Amateur Sports Act, federally chartered the Center, a 501(c)(3) nonprofit, as the nation's safe sport organization.[4] It gave the Center the scope and

---

[4] 36 USC § 220541. *See* Exhibit 1.

authority to resolve abuse and misconduct reports for more than 11 million individuals throughout the U.S. Olympic and Paralympic Movement. The Act also charged the Center with developing and enforcing policies, procedures, and training to prevent abuse and misconduct. The Center's SafeSport Code ("Code") for the U.S. Olympic and Paralympic Movement, Effective April 1, 2023, governs all participants in the Movement, and our oversight authority helps us ensure all Olympic & Paralympic NGBs adhere to Minor Athlete Abuse Prevention Policies ("MAAPP") that support athlete safety. *See* Exhibit 2.

Under the Center's Code XI(J), the Center must ensure:

> For any action taken by the Center against a Respondent including investigation, the imposition of sanctions, and any other disciplinary action, is carried out in a manner that provides procedural due process to the individual, including, at a minimum—
>
> > (i)  the provision of written notice of the allegations against the individual;
> >
> > (ii)  a right to be represented by counsel or other advisor;
> >
> > (iii)  an opportunity to be heard during the investigation;
> >
> > (iv)  in a case in which a violation is found, a reasoned decision by the Center; and
> >
> > (v)  the ability to challenge, in a hearing or through arbitration, interim measures or sanctions imposed by the Center. *Id*.

Currently, more than three years into an investigation, Moore has been irreparably harmed by the actions of those involved in the Center's dilatory investigatory process. The very organization that is meant to serve individuals in sport is abusing and failing to follow its own process through its lack of notice, due process, discovery, fundamental fairness, or any myriad of other substantive and procedural protections normally afforded respondents in such matters.  In *Harding v. US Figure Skating Ass'n*, 851 F. Supp. 1476 (D. Or. 1994), the court held,

> "Defendant also argues that the Figure Skating Association's bylaws provide an exclusive administrative procedure for resolution of disputes. However, that procedure works only so long as defendant follows it. Defendant's argument boils down to an assertion that plaintiff has no remedy even if defendant refuses to follow its own procedures. I disagree."

When a National Governing Body (NGB) such as USA Gymnastics, the above cited Figure Skating Association, or the Center which was created to govern such issues for them, creates a situation where the Plaintiff has no remedy and refuses to follow its own procedures it is fair and appropriate under well settled law for this Court to intervene in the manner as Moore requests.

From the first allegations being reported in June of 2020, to the JAMS arbitration which fully cleared Alexis in June of 2023, the first time that plaintiffs were given notice of the actual allegations being made against them was when the Center released its Notice of Decision and Investigatory Report in March of 2023.

The Center violated its own rules governing such investigations. *The Center openly admitted and flaunted that the investigator and the Center did not objectively evaluate evidence or have an articulatable standard of care to be used when investigating allegations of coaching misconduct.* Unfortunately, that sworn testimony is also obscured and hidden by the Center, until such time the Center is sued, and it is ordered to produce such documents in discovery. The conduct of the Center has done irreparable harm to Moore and done so by maliciously investigating and issuing findings that fly in the face of any rational understanding of fundamental fairness or procedural and substantive due process. The Center's knowing and willful violations of its own Code, as well as its intentional misrepresentation of the content of the Ted Stevens Act and Code, were in bad faith when it issued the most recent suspension based upon retaliation. The Center's continued conduct is abhorrent, reprehensible, and certainly in bad faith. The Center's own investigative report provides concrete support to the notion that the Center is little more than a purely political advocacy group.

The crux of this current motion is that the Center may impose temporary measures at *any point* before a matter is final, and the Center has shown that it will do so in retaliation for the very filing of the instant action. *See* the Code at Section IX.A.1. (2022).  Although Moore prevailed in the Temporary Measures Hearing on

July 24, 2023, she may well find herself in the exact same situation at any point in the future, or this cloud can continue to hang over her and her family indefinitely.

When Moore requested her most recent temporary measures hearing, it was not a hearing on the merits; indeed, *"in all cases, there shall be a rebuttable presumption that the allegations, as presented, are true." Id*. at XIV.40.e. As such, the hearing was limited only to determining whether there was reasonable cause to impose the measure for the reasons stated in Rule 40(e). *Id*. (emphasis added) To affirm the temporary measures, an Arbitrator must have found that either: (i) the measure is reasonably appropriate based on the seriousness of the allegations *and facts and circumstances of the case*; (ii) the measure is reasonably appropriate to maintain the safety or well-being of the Claimant, other Athletes, or the sport community; or (iii) the allegations against the Respondent are sufficiently serious that the Respondent's continued participation in the sport could be detrimental to the best interest of sport and those who participate in it. *Id*. (Emphasis added). In the latest ruling, the Arbitrator found that Moore rebutted the presumption and removed the new suspension which was issued as a direct result of this action. However, the Center continues to be unrestrained in its ability to issue yet another sanction or ruling, at any moment, and may use as the basis of such rulings its own self-interested and flawed investigation – an investigation admittedly conducted in a manner in violation of its own Code.

The most recent Notice of Allegation and suspension are little more pure political theater and retaliation against Moore by the Center. The Center has utterly failed at providing any semblance of a fair process to Moore, and the Center's latest actions is based upon a skewed reading the Act and the Code meant to deprive Moore of any administrative or legal recourse. Underscoring the misconduct of the Center, the Center issued the newest allegation under a separate file number, rather than through an amendment to the previous allegation. This action intentionally and maliciously obscures the posture and facts associated with 2020-01057 and would intentionally preclude access to all previous filings, documents, and evidence – even when it is entirely the same set of facts.  The Center is fully aware that in a Rule 40 hearing the Arbitrator is to evaluate all facts and circumstances known at the time of the hearing – why hide them?

Further, the July 24, 2023, arbitration decision to reinstate Moore as a coach implies that even without delving into the underlying facts of the case being brought against Moore by the Center, it is apparent that the Center is continuing to select inappropriately harsh punishments against Moore as it drags out this process.  The Center has been provided with an incredible amount of responsibility, it has a duty to exercise its mission in accordance with its rules and the rule of law. This entire matter calls into question whether the Center is up to that task.

## APPLICABLE LAW AND ELEMENTS

Federal Rule of Civil Procedure 65(b) empowers courts to grant injunctive relief. The court considers four factors in determining whether a preliminary injunction is appropriate:

> (1) whether the movant has a strong likelihood of success on the merits;
>
> (2) whether the movant would suffer irreparable injury without the injunction;
>
> (3) whether issuance of the injunction would cause substantial harm to others; and
>
> (4) whether the public interest would be served by issuance of the injunction.[5]

In *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) abrogated on other grounds by *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015), the court stated, "(t)he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." "Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are

---

[5] *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 627 (6th Cir. 2013).

dispositive of the issue." *Id.* When the issues concerning issuance of a preliminary injunction are primarily questions of law, no evidentiary hearing is required, and a motion for a preliminary injunction can be decided on the papers.[6]

## HARM TO PARTIES AND PUBLIC CAUSED BY TEMPORARY RESTRAINING ORDER

In considering whether to grant a temporary restraining order, courts assess which party will be harmed more, if at all, by granting injunctive relief. "In considering this factor, the Court must (1) balance the harm Plaintiff would suffer if its request for a preliminary injunction were denied against the harm Defendant would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties."[7] Moore would suffer continued and immediate harm should the Center be allowed to continue this investigation and potentially issue another punitive decision at any moment. She is suffering from extreme emotional distress and has suffered for the last three years. Bay Valley Academy, her employer, suffers from the continuous release and clawing back of

---

[6] *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007).

[7] *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1073 (E.D. Mich. 2011) quoting *Procter & Gamble Co. v. Georgia–Pacific Consumer Prods. LP*, 2009 WL 2407764, at *10 (S.D.Ohio Aug. 3, 2009); accord *Trenton Corp. v. Superior Corrosion Control*, Inc., 2007 WL 268792, at *6 (E.D. Mich. Jan. 25, 2007).

varying punishments aimed at their head coach.   Moore's gymnasts and their families have been contacted regarding the investigation, which causes harm to reputation within her community.   Moore's high-level gymnasts are put at risk by constantly removing their coach. The claimants and witnesses have been allowed to release their story while Moore has remained quiet due to the restrictions of the Code.   Thus, third parties have been and will continue to be impacted by the continued actions of the Center.   Undue hardships have been suffered by third parties not involved in this litigation due to the actions of the Center as they pursue this dilatory investigation.   The Center would be unharmed by the issuance of an injunction, and any argument that such would create a chilling effect on reporting is wholly without merit because the actions of the Center here are detrimental to both claimants and respondents throughout sport. A judicial review of this matter is necessary to determine whether the Center is in fact protecting all participants within the framework of Olympic movement sports.   A refusal to intervene on behalf of Olympic movement participants in general and Moore in particular, would be against public policy as the Center's misconduct calls into question the validity of the very system statutorily created to protect all participants.

LIKELIHOOD OF SUCCEEDING ON THE MERITS

Moore has a strong likelihood of succeeding on the merits of her case. On July 24, 2023, a JAMS arbitrator issued a decision once again overturning the Center's

attack on Moore, by removing the new suspension issued on July 18, 2023. The Arbitrator stated, "(t)he standard for review is not in dispute. The Parties agree that there is a "rebuttable presumption" that the allegations set forth by Center are true. Here, Respondent denied the allegation of retaliation and rebutted the presumption by providing the complaint which names the defendants by pseudonyms and alleges specific due process improprieties in the investigation at all levels from Claimant, to Witnesses, as well as the investigator."[8] While the finding in the July 24, 2023, arbitration is limited to the recent charges of retaliation, it is indicative of how neutral third parties have viewed the actions of the Center. When Alexis was finally given a chance to argue her case in a JAMS arbitration, she was victorious based upon the same IR used for Moore. Further, the Center's investigator admitted on the record and under oath that no objective basis or standard was applied to any portion of the Center's investigation of Moore. The Center's own investigator offered advice to Participating Entities regarding keeping their stories straight to avoid defamation. The Center breached their contract with Moore by treating her as an advisory instead of a Participant with the same rights as other Participants. As such, by their own statements, the Center has admitted to violating the applicable rules governing the

---

[8] To maintain the confidential work product within the JAMS Arbitration Determination of Temporary Measures for JAMS CASE NO. 1501000590, plaintiffs will reference documents that will be submitted under seal.

process and making the likelihood of Moore's succeeding on the merits of this case high.

<u>IRREPARABLE HARM TO MOORE</u>

Granting immediate injunctive relief will save Moore from further and continued irreparable injury and force the Center to lawfully justify its conduct to this Court. Irreparable harm is harm that falls outside the scope of monetary damage.[9]  No harm would come to anyone if this injunction were to be put in place, as Moore has been coaching for over forty (40) years and was coaching long before and finding or temporary measures were released by the Center, and she will continue coaching now that the most recent suspension has yet again been lifted. However, the Center has shown that they can and will attempt to suspend/ban her from sport at any time, which not only creates extreme emotional harm to and her athletes,  but also harms the interest of Bay Valley Academy and puts the health and safety of her current athletes at risk.

<u>PUBLIC INTEREST IS SERVED</u>

The public interest is best served by requiring the Center to follow all rules governing its actions, and to provide notice and fair process to all who fall under its

---

[9] *Basicomputer v. Scott*, 973 F.2d 507, 511 (6th Cir.1992) ("[A] plaintiff's harm is not irreparable if it is fully compensable by money damages.").

jurisdiction while equitably serving all those participating within the Olympic movement as contemplated within the Ted Stevens Act.

When considering whether an injunction is appropriate, "[a]s long as there is some likelihood of success on the merits, [the four preliminary injunction] factors are to be balanced, rather than tallied."[10]

## REQUEST FOR WAIVER OF SECURITY

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65(c) appears to make posting of security mandatory; however, "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."[11] This Court has also held that "the Court has significant discretion to waive the bond requirement in light of the public interest."[12] Moore respectfully requests this Honorable Court waive any bond requirement, and

---

[10] *McGirr v. Rehme*, 891 F.3d 603, 613 (6th Cir. 2018) quoting *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017).

[11] *Molton Co. v. Eagle-Picher, Indus. Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).

[12] *Concerned Pastors for Soc. Action v. Khouri*, 220 F. Supp. 3d 823, 829 (E.D. Mich. 2016).

asserts "(t)he party being enjoined has the burden of establishing the need for a bond and the required amount."[13]  Further, as Moore has argued that she meets all of the elements of the requested injunction, she asserts that the posting of a security bond would be inappropriate as the Center is subject to no harm.[14]

## CONCLUSION

Moore respectfully requests this honorable court to stop the Center's continued dilatory, malicious, and retaliatory actions using its injunctive power until such a time as a ruling can be obtained on a preliminary injunction.  The Center has proven that they will attempt to manipulate and violate its own rules in order to continue its persecution of Moore, despite the involvement of this court and the right of the courts to intervene when they choose to violate the rules governing their actions. Therefore, Moore respectfully requests a Temporary Restraining Order freezing investigations into Moore by the U.S. Center for SafeSport (the "Center"), file numbers 2020-01057 and 2023-03310, and all punitive or retaliatory actions including but not limited to suspensions, extra requirements, restrictions, interviews,

---

[13] *RGIS, LLC v. Gerdes*, 2020 U.S. Dist. LEXIS 11831, 2020 WL 409657, (E.D. Mich. Jan. 24, 2020).

[14] *Select Distribs., LLC v. Breeze Smoke, LLC*, 2021 WL 2820985, 2021 U.S. Dist. LEXIS 23308, at *13 (E.D. Mich. Feb. 8, 2021).

statements, decisions, releases of reports or statements, and placing of Moore's name on any public or private disciplinary databases until such a time as this Court can evaluate the necessity of a preliminary injunction in light of the conduct of the Center.

Date:  July 27, 2023

Respectfully submitted,

By:/s/ Russell S. Prince
Russell Scott Prince
**Bryan & Prince, PA.**
1600 East 8th Avenue
Centro Ybor A100
Tampa, FL 33605
(813) 491-8767
rprince@bryanprincepa.com
www.bryanprincepa.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, I electronically filed the above paper with the Clerk of the Court using the ECF system, which provides notice to all parties and counsel of record.

Respectfully submitted,

By:/s/ Russell S. Prince
Russell Scott Prince
**Bryan & Prince, PA.**
1600 East 8th Avenue
Centro Ybor A100
Tampa, FL 33605
(813) 491-8767
rprince@bryanprincepa.com
www.bryanprincepa.com
*Attorney for Plaintiffs*