UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NANCI MOORE and ALEXIS MOORE,

        Plaintiffs,

v.

U.S. CENTER FOR SAFESPORT, et al,

        Defendants.
_____/

Case No. 1:23-cv-11681

Honorable Thomas L. Ludington
United States District Judge

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF NANCI MOORE'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

Seasoned gymnastics coach Nanci Moore seeks a temporary restraining order to enjoin the United States Center for SafeSport—an independent investigatory organization—from investigating or disciplining her. Because she has not satisfied the procedural requirements, her motion will be denied without prejudice.

I.

For decades, Plaintiff Nanci Moore and her daughter, Plaintiff Alexis Moore, have been involved in gymnastics. *See* ECF No. 1 at PageID.6–7. Currently, they coach "upper-level optional gymnasts" at Bay Valley Academy in Bay City, Michigan. *Id.* at PageID.1, 6, 7. They are also members of USA Gymnastics, the national governing body of gymnastics, as designated by the United States Olympic Committee. *Id.* at PageID. 3; *see* 36 U.S.C. § 220521(a) (authorizing the United States Olympic Committee to certify only one national governing body for each Olympic sport).

Defendant United States Center for SafeSport is a nonprofit corporation "empowered by Congress to exercise jurisdiction over" both the United States Olympic Committee (USOC) and

all its sport-specific national governing bodies. *Gonzalez v. U.S. Ctr. for SafeSport*, 374 F. Supp. 3d 1284, 1288 (S.D. Fla. 2019). SafeSport's mission is to safeguard "amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports." 36 U.S.C. § 220541(a)(1)(B)).

In the late 2000s and early 2010s, numerous reports of sexual abuse by coaches in Olympic sports made national headlines, most notably those of US coaches in swimming, taekwondo, and gymnastics. *See* Alexandria Murphy, Comment, *Better Late than Never: Why the USOC Took So Long to Fix a Failing System for Protecting Olympic Athletes from Abuse*, 26 JEFFREY S. MOORAD SPORTS L.J. 157, 170–78 (2019). In response, the USOC "sought to open" SafeSport in 2015, but it did not open until 2017, reportedly due to a lack of funding.[1] *Id.* at 183. Then the United States Center for Safe Sport Authorization Act of 2017 "designated" SafeSport as "the independent organization to investigate and adjudicate abuse allegations in the Olympic movement." S. REP. NO. 115-443, at 1 (2018); *see also* 36 U.S.C. § 220541(a)(1)(B) (designating duties to SafeSport).

SafeSport is authorized to investigate allegations of abuse within Olympic sports and, if it finds a violation, then it "may penalize the perpetrator by issuing a warning, probation, suspension, or even imposing permanent ineligibility." Anne Marie Burke, *Raising the Bar: Increasing*

---

[1] At its inception, the Center received its operational funding "principally though cash and in-kind contributions from the USOC and NGBs," though it "contemplate[d] additional funding from the private sector, including foundations, corporations, and individuals." S. REP. NO. 115-443, at 3 (2018). Notably, however, in 2017 the Senate Committee on Commerce, Science, and Transportation "recognize[d] that additional sources of funding, including access to Federal funding," [we]re needed to ensure the Center's independence and long-term viability." *Id.* But aside from a $2.2 million grant from the Department of Justice, SafeSport received no federal funding. *See* Rick Maese, *Olympic Sexual Abuse Prevention Center Needs Federal Funding Help USOC Chief Says*, WASH. POST (May 23, 2019), https://www.washingtonpost.com/sports/2019/05/23/olympic-sex-abuse-prevention-center-needs-federal-funding-help-usoc-chief-says/) **[**https://perma.cc/5BKG-76XQ**]**. Now, SafeSport receives most of its funding through the USOC, which has been statutorily required to pay SafeSport $20 million each year since January 2021. *See* 36 U.S.C. § 220541(g)(1).

*Protection for Athletes in the Olympic Movement from Sexual Harassment and Abuse*, 31 J. LEGAL ASPECTS SPORT 60, 89 (2021) (noting that SafeSport has been "extraordinarily productive" in curbing sexual abuse). *But see* Amanda J. Peters, *When Coaching Becomes Criminal*, 20 U. N.H. L. REV. 1, 31 (2021) (outlining criticisms of SafeSport, including potential impartiality and that it is "ill equipped to investigate the thousands of abuse reports filed by athletes every year").

In June 2020, SafeSport received a complaint, triggering investigations into Nanci and Alexis. ECF No. 1 at PageID.11. Six months later, they both received Notices of Allegations ("NOAs").[2] The NOAs outline allegations of misconduct that Plaintiffs argue "d[o] not provide any degree of specificity from which [they] could adequately prepare for an interview or written response." *Id.* Plaintiffs cooperated with SafeSport's investigation and were interviewed by the investigator, Simone Cardosa, in February 2021. *Id.* at PageID.12. The investigation continued through March 2023, during which time SafeSport sent "updated" NOAs to Plaintiffs. *Id.* According to Plaintiffs, each "updated" NOA again lacked specificity to allow Plaintiffs to prepare for interviews or responses. *Id.*

In March 2023, SafeSport released its Notice of Decision and Incident Report for both Nanci and Alexis. *Id.* Alexis was placed on a two-year term of probation, and Nanci was suspended for two years. ECF No. 7 at PageID.204. Alexis challenged SafeSport's decision through arbitration, as required by SafeSport's Code. ECF No. 1 at PageID.25. In June 2023, all coaching restrictions were removed from Alexis, and SafeSport was ordered to pay her arbitration fees. *Id.*

On April 14, 2023, SafeSport sent Nanci an "Amended Notice of Allegations," alleging that she violated her suspension by teaching and coaching dancers who may have also been

---

[2] The details of these allegations are confidential under 36 U.S.C. § 220541(f)(4)(C) and will not be discussed in this publicly available Opinion, but Plaintiffs have filed the relevant NOAs under seal. *See* ECF No. 6 (granting Plaintiffs' motion to file NOAs under seal).

gymnasts," thus vacating the March 2023 Notice of Decision and Incident Report that suspended her. *Id.* at PageID.20–21. Thirteen days later, SafeSport revoked the suspension and allowed Nanci to coach under supervision. *Id.* at PageID.21. She received an "updated" NOA the next day, followed by another "updated" NOA 17 days later. *Id.*

On July 13, 2023, Nanci and Alexis sued[3] SafeSport, Simone Cardosa, and four confidential claimants and witnesses listed in SafeSport's March 2023 Notice ("Participating Entities 1–4").[4] Both Nanci and Alexis allege they were harmed by SafeSport's "dilatory investigatory process," ECF No. 1 at PageID.2, and jointly bring the following eight claims:

| Count | Defendant(s) | Claim |
|---|---|---|
| I | U.S. Center for SafeSport<br>Simone Cardosa | Breach of contract |
| II | U.S. Center for SafeSport | Respondeat Superior |
| III | U.S. Center for SafeSport | Negligent Supervision |
| IV | U.S. Center for SafeSport<br>Simone Cardosa<br>Participating Entity 3 | Tortious interference with a business relationship or expectancy |
| V | U.S. Center for SafeSport<br>Simone Cardosa<br>Participating Entity 3 | Tortious interference with a contract |
| VI | U.S. Center for SafeSport<br>Simone Cardosa<br>Participating Entity 3 | Defamation |
| VII | U.S. Center for SafeSport<br>Simone Cardosa<br>Participating Entity 3 | Invasion of privacy by false light |
| VIII | U.S. Center for SafeSport<br>Simone Cardosa | Intentional Infliction of Emotional Distress |

*Id.* at PageID.38–55. In addition, Nanci brings the following five individual claims:

| Count | Defendant(s) | Claim |
|---|---|---|
| IX | U.S. Center for SafeSport | Sherman Antitrust Act |
| X | U.S. Center for SafeSport | Clayton Antitrust Act |

---

[3] *See* 36 U.S.C. § 220541(d)(3)(A) (requiring all lawsuits against SafeSport to be removed to the United States District Court).
[4] Because these Defendants' identities are confidential, *see* 36 U.S.C. § 220541(d)(4)(G), this Court granted Plaintiffs' request to issue summonses for these Defendants under seal, ECF No. 6.

| XI | U.S. Center for SafeSport | Michigan Antitrust Reform Act |
|---|---|---|
| XII | Participating Entity 1<br>Participating Entity 2<br>Participating Entity 4 | Defamation |
| XIII | Participating Entity 1<br>Participating Entity 2<br>Participating Entity 4 | Invasion of privacy by false light |

*Id.* at PageID.55–66.

Five days after Plaintiffs' Complaint was filed here, SafeSport sent Nanci an "entirely new" NOA and imposed an interim suspension. ECF No. 7 at PageID.206. According to Nanci, the new NOA alleges Nanci retaliated against Participatory Entities 1–4 by naming them as defendants in this case. *Id.* at PageID.207; *see also* SAFESPORT CODE FOR THE U.S. OLYMPIC AND PARALYMPIC MOVEMENT, at 19 (Apr. 1, 2023), https://uscenterforsafesport.org/wp-content/uploads/2023/02/2023_SafeSportCode.pdf [https://perma.cc/JR8S-RUUX] (prohibiting retaliation against any person related to allegations of prohibited conduct). On July 21, 2023, an arbiter conducted an interim measures hearing and lifted Nanci's interim suspension three days later. *Id.* (stating that Nanci "had rebutted the presumption of misconduct within the new allegations of retaliation, further pointing to the excessive and purely political nature of the Center's continued conduct").

Four days after her suspension was lifted, Nanci filed an *ex parte* emergency motion for a temporary restraining order. ECF No. 7. She seeks an order enjoining SafeSport from investigating and taking any "punitive or retaliatory actions" against her, including "suspensions, extra requirements, restrictions, interviews, statements, decisions, releases of reports or statements, and placing of [Nanci's] name on any public or private disciplinary databases" until this Court can evaluate the necessity of a preliminary injunction. ECF No. 7 at PageID.219–20.

## II.

A Court may issue a temporary restraining order without informing the other party, but only if the movant provides a detailed affidavit or verified complaint that clearly demonstrates the need for immediate action to avoid irreparable harm. Additionally, the movant's attorney must explain in writing the efforts made to notify the other party and the reasons why such notice is not necessary. FED. R. CIV. P. 65(b)(1).

If the procedural requirements are satisfied, then the merits of the motion may be considered. "[T]he purpose of a [temporary restraining order] under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). In determining whether to grant such relief, a court must weigh four factors:

> (1) whether the movant has a strong likelihood of success on the merits,
> (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief,
> (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and
> (4) whether the public interest would be served by granting the preliminary injunctive relief.

*A & W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

## III.

Nanci argues that the irreparable injury she faces is that SafeSport "can and will attempt to suspend/ban her from sport at any time." ECF No. 7 at PageID.217. But she has not shown that such harm *will* occur before SafeSport can be noticed and heard; she has merely argued that it *might* occur. To that end, she spends much time outlining her suspension on July 18, 2023, which was lifted six days later—after a hearing. *See* ECF No. 7 at PageID.210–11. According to Nanci, the July 18 suspension suggests "she may well find herself in the exact same situation at any point in the future, or this cloud can continue to hang over her and her family indefinitely." *Id.* at PageID.211. But the possibility that a party *might* again suffer harm that has already occurred and been remedied does not show that harm *will* occur before the opposition can be heard. In sum, she has not shown "specific facts . . . [that] clearly show that immediate and irreparable injury, loss, or damage *will result* to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A) (emphasis added); *see also Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006) ("A temporary restraining order is an extraordinary remedy that generally is reserved for emergent situations in which a party may suffer irreparable harm *during the time required to give notice* to the opposite party or where *notice itself may precipitate the harm*." (emphasis added)). Thus, she has not satisfied the first procedural requirement.

Nor has Nanci's attorney "certifie[d] in writing any efforts made to give notice [to SafeSport] and the reasons why it should not be required." FED. R. CIV. P. 65(b)(1)(B). Her Motion must be denied for this reason, as well. *See Slave Legacy, LLC v. Son of Slave*, No. 3:23-CV-152, 2023 WL 3919317, at *5 (S.D. Ohio June 9, 2023) (holding that courts may not issue TROs if Civil Rule 65(b)(1)(B) has not been satisfied) (collecting cases).

In sum, because Nanci has not satisfied either procedural requirement of Civil Rule 65(b)(1), her Motion will be denied without prejudice. *See Brown v. Countrywide Home Loans*,

- 8 -

No. 2:09-CV-12359, 2009 WL 1798069, at *1 (E.D. Mich. June 19, 2009) (denying motion for temporary restraining order because Civil Rule 65(b)(1) was not satisfied); *United States ex rel. Oakes v. Cinnaire*, No. 1:18-CV-13540, 2019 WL 13202006, at *2 (E.D. Mich. Oct. 2, 2019) (same); *C.K. ex rel. Sprinstead v. Oakland Cmty. Health Network*, No. 2:20-CV-13301, 2021 WL 5278723, at *2 (E.D. Mich. Feb. 8, 2021) (same); *Davis v. Berke*, No. 1:20-CV-00098, 2020 WL 1970712, at *2 (E.D. Tenn. Apr. 17, 2020) (same).

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Nanci Moore's Ex Parte Motion for Temporary Restraining Order, ECF No. 7, is **DENIED WITHOUT PREJUDICE**.

**This is not a final order and does not close the above-captioned case**.

Dated: August 1, 2023                                s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge